# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BERNIE B., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. CV 16-6661-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Bernie B. ("Plaintiff") appeals from the Social Security Commissioner's final decision denying his application for Supplemental Security Income ("SSI").[1] The Commissioner's decision is reversed and this case is remanded.

## I. BACKGROUND

Plaintiff filed an application for SSI on August 2, 2012, alleging disability beginning on July 31, 2008. See Dkt. 19, Administrative Record ("AR") 111-16. After being denied initially and upon reconsideration, Plaintiff

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

received a hearing before an Administrative Law Judge ("ALJ") on April 20, 2015. See AR 81-84, 93-106. The ALJ heard testimony by Plaintiff, his brother-in-law, and an impartial vocational expert ("VE"). See AR 23-52.

On May 19, 2015, the ALJ denied Plaintiff's claim. See AR 7-22. The ALJ found that Plaintiff had the following severe impairments: history of open heart surgery secondary to stab wound (2000); hypertension; obesity; L4-5 vacuum phenomenon with small osteophytes at L3-5 and moderate to severe neural foraminal narrowing at L4-5; and mild degenerative disc disease of the cervical spine. See AR 12. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: occasionally climb ladders, stoop, kneel, crouch, and crawl; frequently climb stairs; frequent reaching laterally and in front of the torso; no concentrated exposure to extreme cold and vibration; and no working at unprotected heights or operating hazardous moving machinery. See AR 15.

Based on the evidence of record, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, such as sales attendant, Dictionary of Occupational Titles ("DOT") 299.677-010 and marker, DOT 209.587-034. See AR 17-18. Accordingly, the ALJ determined that Plaintiff was not disabled. See AR 18.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-4. This action followed. See Dkt. 1.

## II. DISCUSSION

The parties dispute whether the ALJ erred in: (1) assessing the medical-opinion evidence, (2) assessing Plaintiff's credibility, (3) concluding that Plaintiff could perform light work, (4) failing to find the VE's testimony inconsistent with the DOT, (5) failing to find Plaintiff disabled under the Medical-Vocational Guidelines, and (6) failing to find that Plaintiff met or

equaled the severity of several listings. See generally Dkt. 28, Opening Brief ("OB"). [2] Because the Court finds that the ALJ erred in discounting the opinions of Plaintiff's mental health providers, the Court does not reach the remaining issues. Upon remand, the ALJ may wish to consider Plaintiff's other claims of error.

A. **Medical Opinions**

   1. **Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 416.927(c). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. See Ghanim v. Colvin, 763 F.3d 1154, 1160 (9th Cir. 2014).

When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in

---

[2] The Court's standing order in Social Security disability appeals requires the parties to cooperate in preparing a joint submission, with each side allotted 25 pages and Plaintiff receiving an additional 10 pages for an optional reply. See Dkt. 11. Nevertheless, Plaintiff filed an oversized 44-page opening brief in disregard of the Court's joint submission requirement and page limitations. To make matters worse, Plaintiff's brief was disorganized and hard to follow— e.g., the "Statement of Issues" listed five substantive issues, whereas the argument section included six issues, some of which were different. Plaintiff followed up his opening brief with a 33-page reply. Plaintiff's counsel is admonished to follow the Court's orders. Further filings of the sort made in this case may be stricken.

the record." Id. The ALJ can meet this burden by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. See 20 C.F.R. § 416.927(c).

2. **Medical Opinions and ALJ Reasoning**

Plaintiff contends that the ALJ erred in rejecting the opinions of Nurse Practitioner Kristin Wilkerson, Dr. Sandra Alvarado, and Dr. Sonia Martin.

a. Kristin Wilkerson and Dr. Sandra Alvarado

In December 2014, Plaintiff visited Nurse Practitioner Kristin Wilkerson for the purposes of medication management. See AR 326-29. Wilkerson noted that Plaintiff suffered from post-traumatic stress disorder ("PTSD") and recorded a Global Assessment of Function ("GAF") score of 60.[3] See id. Plaintiff saw Wilkerson again in January, February, and March 2015; in each visit, the two worked to find a proper medication for Plaintiff. See AR 330-42.

In May 2015, Wilkerson filled out a Mental Residual Functional Capacity Questionnaire. See AR 351-55. She opined that Plaintiff suffered from the following: Axis I, PTSD, and major depression; Axis II, back pain, Axis III, deferred; and Axis IV, severe. See AR 351. Wilkerson described Plaintiff's prognosis as "fair, mostly depending on [his] motivation to obtain counseling along with medication management." Id. She opined that Plaintiff

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "A GAF score between 51 to 60 describes 'moderate systems' or any moderate difficulty in social, occupational, or school functioning." Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014).

was either "seriously limited, but not precluded" or "unable to meet competitive standards" in all work-related abilities, and would miss more than four days of work per month. See AR 353-55.

In April 2015, Plaintiff attended an intake session with Dr. Sandra Alvarado. See AR 363. Dr. Alvarado diagnosed Plaintiff with: Axis I, PTSD; Axis II, deferred; and Axis IV, severe, with problems related to primary support group, social environment, occupation, housing, and finances. See id. Dr. Alvarado noted that Plaintiff had difficulty sleeping due to nightmares, feared he would be attacked again, felt helpless and hopeless about his current situation, and when out in public, experienced hypervigilance, increased heart rate, racing thoughts, and fear. See AR 367.

In May 2015, Dr. Alvarado completed a Mental Residual Functional Capacity Questionnaire. She diagnosed Plaintiff with: Axis I, PTSD and major depressive disorder (recurrent and severe); Axis II, deferred; Axis III, hypertension; Axis IV, problems related to primary support group, social environment, occupation; and recorded a GAF score of 57. See AR 357. She noted Plaintiff's prognosis as "poor to fair" and checked off boxes indicating Plaintiff would be "unable to meet competitive standards" or had "no useful ability to function" in all work-related abilities. See AR 359-60. Dr. Alvarado opined that Plaintiff's PTSD and depression would interfere with his ability to attend work regularly, complete a workday, concentrate and remember tasks, and manage work stress or changes, and that he would be absent from work more than four days per month. See id.

The ALJ gave little weight to both opinions. See AR 13-14. First, the ALJ reasoned that "the treatment records do not show the types of serious abnormalities and symptoms that would be expected if [Plaintiff's] limitations were as severe as now opined." Id. Second, the ALJ noted that Plaintiff was "not consistent with his medication or recommendations for counseling with

5

which [he] may have markedly improved." AR 14. Finally, the ALJ noted that while Plaintiff reported severe symptoms at his intake session with Dr. Alvarado, she "does not appear to have a longitudinal history with the claimant that would allow her to base her opinions on her own observations of the claimant's functioning, rather than his reports." Id.

      b.     Dr. Sonia Martin

In August 2013, consultative examiner Dr. Sonia Martin diagnosed Plaintiff with: Axis I, PTSD, and depressive disorder; Axis II, deferred; Axis III, stab wound to the chest and chronic low back pain; Axis IV, mental health and medical issues; and Axis V, GAF of 55. See AR 257-58. Dr. Martin opined that Plaintiff was "mildly impaired" in his ability to maintain adequate pace or persistence to perform one or two step repetitive tasks; "moderately impaired" in his abilities to maintain adequate pace or persistence to perform complex tasks, maintain adequate attention/concentration, adapt to changes in job routine, interact appropriately with coworkers, supervisors, and the public in a regular basis, and adapt to changes, hazards, or stressors in a workplace setting; and "markedly impaired" in his ability to withstand the stress of a routine workday. See AR 258.

The ALJ did not credit Dr. Martin's findings because they were "inconsistent with the essentially normal mental status examination and with the very limited mental health treatment in the record." AR 13.

    **3.**    **Analysis**

Plaintiff suggests that the Court should apply the "clear and convincing" standard to the ALJ's reasoning, whereas the Commissioner contends it should be the "specific and legitimate" test. Because the ALJ's reasoning is inadequate under either standard, the Court need not resolve this dispute.

The ALJ primarily discounted the providers' opinions because they were inconsistent with Plaintiff's normal mental health examinations. See AR 13-14. While an ALJ may discredit medical opinions that are unsupported by "objective medical findings," Batson v. Comm'r, SSA, 359 F.3d 1190, 1195 (9th Cir. 2004), the ALJ's wholesale rejection of the opinions of Dr. Alvarado, Dr. Martin, and Wilkerson was erroneous. Rather than being, as the ALJ put it, "essentially normal," AR 13, Plaintiff's examinations consistently showed that he suffered from ongoing mental health issues. As one example, the providers' opinion that Plaintiff was impaired in his ability to deal with coworkers and stress, see AR 258 (Dr. Martin), 353-55 (Wilkerson), 359-60 (Dr. Alvarado), is well-supported by extensive treatment records documenting Plaintiff's PTSD and anxiety stemming from a 2000 stabbing. Indeed, every mental health professional to examine Plaintiff, including both state consultative examiners, opined that Plaintiff had at least moderate impairments in his ability to interact with coworkers and the public. See AR 241, 258. The ALJ's finding is thus not supported by substantial evidence.

Nor do the limited daily activities reported by Plaintiff support the ALJ's treatment of the mental health providers' opinions. While it is true that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination," Ghanim, 763 F.3d at 1165, that Plaintiff "occasionally" sees a friend and could "interact adequately" with the consultative examiners, AR 13, does not adequately conflict with his reported limitations. Indeed, Plaintiff's PTSD symptoms connected with being out in public—including constant "fear[]," "hyperviligil[ance]," and a "preoccup[ation]" with the stabbing, AR 240—are consistent with Plaintiff being able to function one-on-one but having limitations in a group setting.

The ALJ also discredited the mental health providers because Plaintiff was "reluctant to try" or "not consistent with" his medication or recommendations for counseling. AR 13-14. Although neither party discusses this issue in the briefing, some courts have found that "substantial evidence of a claimant's failure to comply with a medication regimen may establish a 'specific and legitimate' reason to reject the contradicted opinion of a treating professional where that opinion did not address the issue." Leal v. Colvin, No. 12-1129, 2013 WL 1715419, at *3 (E.D. Cal. Apr. 19, 2013); see also Ibarra v. Comm'r of Soc. Sec., No. 17-452, 2018 WL 347818, at *12 (E.D. Cal. Jan. 10, 2018) (finding that claimant's non-compliance with his prescribed treatment was a specific and legitimate reason to reject treating physician's opinion). The Ninth Circuit has cautioned, however, that it is a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted). Indeed, Plaintiff's inconsistent treatment regime appears to have been due, at least in part, to his mental impairment—e.g., Plaintiff repeatedly voiced his concerns about taking medications due to worries about "big pharma." AR 326. Given the record and the Ninth Circuit's admonition in Nguyen, the Court will not take Plaintiff's spotty treatment record, without more, as a reason to discredit his treatment providers.

The ALJ may have offered an appropriate reason for discounting Dr. Alvarado's opinion: she did not have a longitudinal history "that would allow her to base her opinions on her own observations of the claimant's functioning, rather than his reports." AR 14. It is true that Dr. Alvarado completed her report after only one visit with Plaintiff and her records largely mirror his subjective symptoms, with little independent analysis or diagnosis. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

claimant's self-reports that have been properly discounted as incredible."). But the ALJ's reasoning would not apply to Dr. Martin or Wilkerson, and in any event, the Court does not reach the issue of Plaintiff's credibility. Consequently, the Court will not affirm the ALJ on this basis.

**B.    Remand is Warranted**

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to consider the mental health providers' opinions properly.

## III. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and this action is REMANDED for further proceedings.

IT IS SO ORDERED.

Date: March 19, 2019

                                              DOUGLAS F. McCORMICK
                                              United States Magistrate Judge